IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

PRESTON HILL,

          Plaintiff,

   v.

THE CITY OF CLOVIS, MARK
BRADFORD (Badge #5465)
individually and as an officer of the
Clovis Police Department, THE
COUNT OF FRESNO, ELIZABETH
EGAN, individually and as District
Attorney, and ELANA ARON SMITH
individually and as a Deputy District
Attorney,

          Defendants.

1:11-cv-1391  AWI SMS

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

(Doc. Nos. 32, 34)

This case stems from the investigation and prosecution of Preston Hill ("Hill") by Clovis Police Officer Mark Bradford ("Bradford"), Fresno County District Attorney Elizabeth Egan ("Egan"), and Fresno County Deputy District Attorney Elana Smith ("Smith").  Hill brings claims under 42 U.S.C. § 1983, and under California law for malicious prosecution.  The operative complaint is the First Amended Complaint ("FAC"), which was filed following this Court's ruling on a Rule12(b)(6) motion.  Bradford and the City of Clovis (collectively "City Defendants") and Egan, Smith, and the County of Fresno (collectively "County Defendants") have filed separate Rule 12(b)(6) motions.  For the reasons that follow, the motions will be granted in part and denied in part.

## **FACTUAL BACKGROUND**[1]

From the FAC, in July 2010, Hill was a minor, a student, and a member of the wrestling team at Buchanan High School.  See FAC ¶ 13.  At some point in 2010, Hill wrestled fellow Buchanan High School student and wrestling teammate Ross Rice at a scrimmage.  See id.  On July 15, 2010, Bradford extensively questioned Hill about an allegation made by Rice that Hill had assaulted Rice.  See id.  Specifically, Rice alleged that Hill had penetrated Rice's anus with two fingers while they wrestled at the scrimmage.  See id.  Hill was completely cooperative with Bradford and maintained his absolute innocence.  See id.

Shortly after Bradford's interview of Hill, the "individual Defendants" (Bradford, Smith, and Egan), learned that Buchanan High School was considering expelling Hill because of the Rice incident.  See id. at ¶ 15.  The individual Defendants were aware that there was no probable cause to charge/convict Hill, so they decided to use the expulsion proceedings as a "second best" punishment.  See id. at ¶¶ 14, 16.  In order to try and get Hill expelled, the Defendants intentionally prejudiced the expulsion proceedings against Hill, despite Hill's Fourteenth Amendment right to an impartial adjudicator.  See id. at ¶¶ 17-20.

In order to prejudice the expulsion proceedings, the "individual Defendants" delivered Bradford's police report to Buchanan Administrators.  See id. at ¶ 26.  Bradford's report ignored and omitted significant exculpatory information, contained knowingly false and misleading predeterminations, and was not written in good faith.  See id. at ¶¶ 21-26.

Despite knowing that Bradford's report was based on malicious predeterminations and the omission and misrepresentation of key information and facts, Egan and Smith relied on the report to justify an unsupported prosecution of Hill.  See id. at ¶¶ 28, 29.  On August 25, 2010, Hill (while still a minor) was charged with the crime of sexual battery by restraint in a Juvenile Wardship Petition in the Fresno County Superior Court (hereinafter "the Juvenile Action").  See id. at ¶ 33.  At Bradford's request, the juvenile petition was signed by Smith and also listed Egan

---

[1] The Court is required to accept as true all factual allegations in the FAC when resolving a Rule 12(b)(6) motion.  See Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008).  Accordingly, the factual background section is derived from the factual allegations of FAC (unless otherwise noted) and will be used to resolve this motion only.

as a party to the petition.  See id.  The Juvenile Action was instituted by the individual

Defendants, and was filed in order to prejudice the expulsion proceedings and without probable

cause.  See id. at ¶¶ 28, 32-34.  The juvenile petition also omitted exculpatory information.  See

id. at ¶ 31.  The individual Defendants informed Buchanan Administrators of the pendency of the

Juvenile Action in order to prejudice the expulsion proceedings.  See id. at ¶ 34.

On January 6, 2011, Smith issued a subpoena that requested Buchanan High School

records of complaints against Hill between January and July 2010, and records regarding

wrestling team hazing activities in which Hill or his brother (Spencer Hill) were involved.  See

id. at ¶ 37.  Smith had no probable cause to issue the subpoena.  See id. at ¶ 38.  Further, Egan

and Smith sought out and investigated witnesses beyond those interviewed by Bradford,

including Rice's father.  See id. at ¶ 39.  The interviews and subpoena were done in order to

prejudice the expulsion proceeding by creating a false light of Hill's guilt and convincing

Buchanan Administrators that they should expel Hill.  See id. at ¶ 40.

The individual Defendants omitted exculpatory information and regularly communicated

false and misleading information to Buchanan Administrators, including Athletic Director Chris

Hansen, Principal Ricci Ulrich, and administrators Denver Stairs and David Cohen.  See id. at ¶¶

30, 41, 43, 47.

On January 13, 2011, Buchanan Administrators held the expulsion hearing.  See Doc. No.

32-3 Ex. A.[2]  The hearing lasted 11 hours, and Hill was represented by counsel, who was able to

examine witnesses and present evidence.  See id.  After 45 minutes of deliberation, the expulsion

panel found that Hill had violated Penal Code § 243.4 (sexual battery by restraint) and various

sections of the Education Code.  See id.  The expulsion tribunal expelled Hill for the remainder

of the year.  See id.  Since Hill was a senior, there was no opportunity for reinstatement.  See  id.

On January 27, 2011, see Doc. No. 36-1 at 17 n.2, the Juvenile Action terminated.

Because no probable cause supported the criminal charges, the Juvenile Action against Hill was

---

[2]The County Defendants request that the Court judicially notice an amended petition for writ of mandate
that was filed by Hill in the Fresno County Superior Court on July 12, 2011.  See Doc. No. 32.  The County
Defendants contend that the amended petition is a judicially noticeable court record/document.  Hill has filed no
objection or response to the request.  In the absence of an objection, the Court will grant the County Defendants'
request and judicially notice the July 2011 state court petition for writ of mandate.

1    subsequently withdrawn and terminated entirely in Hill's favor.  See FAC at ¶ 44.

2         Hill alleges that the Defendants' conduct violated his Fourteenth Amendment right to

3    procedural due process.  See id. at ¶¶ 19, 20, 47.

4

5                              **RULE 12(b)(6) FRAMEWORK**

6         Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

7    plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

8    dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

9    absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

10   Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

11   Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

12   taken as true and construed in the light most favorable to the non-moving party.  Marceau v.

13   Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

14   1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are

15   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead

16   Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266

17   F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain

18   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

19   Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544,

20   555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

21   allows the court draw the reasonable inference that the defendant is liable for the misconduct

22   alleged."  Iqbal, 129 S.Ct. at 1949.  The Ninth Circuit has distilled the following principles from

23   *Iqbal* and *Twombly*:

24        First, to be entitled to the presumption of truth, allegations in a complaint or
          counterclaim may not simply recite the elements of a cause of action, but must
25        contain sufficient allegations of underlying facts to give fair notice and to enable
          the opposing party to defend itself effectively.  Second, the factual allegations that
26        are taken as true must plausibly suggest an entitlement to relief, such that it is not
          unfair to require the opposing party to be subjected to the expense of discovery
27        and continued litigation.

28   Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In deciding whether to dismiss a claim under

                                              4

1   Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take

2   judicial notice of public records outside the pleadings, review materials which are properly

3   submitted as part of the complaint, and review documents that are incorporated by reference in

4   the Complaint if no party questions their authenticity.  See Knievel v. ESPN, 393 F.3d 1068,

5   1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a

6   Rule 12(b)(6) motion is granted, "[the] district court should grant leave to amend even if no

7   request to amend the pleading was made, unless it determines that the pleading could not

8   possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th

9   Cir. 2000) (en banc).  That is, leave to amend need not be granted where amendment would be

10  futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

11

12  **I.    CITY DEFENDANTS' MOTION**

13       **1.    1st Cause of Action - 42 U.S.C. § 1983**

14       *Defendants' Arguments*

15       Bradford argues that he is entitled to qualified immunity for Hill's § 1983 claims.  First,

16  the FAC does not show that Bradford violated a clearly established constitutional right.  There

17  are no cases that indicate a person has the right to attend the high school of his choice, nor are

18  there cases that indicate a criminal matter that is subsequently voluntarily dismissed by the

19  government violates any constitutional rights.  Further, the FAC does not cite any due process

20  right that Hill has under any source of law that was actually violated.  While the FAC makes

21  vague allegations that the juvenile petition prejudiced the expulsion proceedings, the judicially

22  noticed documents show that Hill had ample opportunity to introduce favorable evidence and

23  cross-examine witnesses.  Second, Bradford's conduct was objectively reasonable.  Bradford

24  investigated allegations of sexual battery, decided that there was probable cause to file a criminal

25  complaint, and forwarded his recommendations in good faith to the district attorney.  Any

26  communications that occurred between Bradford and the Buchanan Administrators was made in

27  furtherance of the investigation and in Bradford's capacity as a Clovis police officer.  Bradford's

28  recitation of his investigative findings to either the administrators or at the expulsion hearing was

not a deprivation of Hill's Fourteenth Amendment rights.

*Plaintiff's Opposition*

Hill argues that dismissal is not appropriate.  First, the FAC identifies a protected property interest in a public education.  This interest, which is provided by California law, receives Fourteenth Amendment procedural due process protection.  That there may have been an opportunity to cross-examine witnesses and present evidence does not matter because the panel was improperly biased through false and misleading information.  Also, even though police officers have a defense of good faith and probable cause in § 1983 actions, that defense is not applicable here.  Bradford wrote his report based on false predeterminations and despite a litany of exculpatory evidence, and he did so as part of a scheme to prejudice the expulsion proceeding.  Bradford was aware of the falsity of his report and of the predeterminations, yet he provided the report to Buchanan Administrators.  Bradford also made communications in behind the scenes discussions and at the expulsion hearing.  Bradford did not have probable cause against Hill, and his conduct violated a clearly established right.

*Legal Standards*

1.    Qualified Immunity

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Phillips v. Hust, 477 F.3d 1070, 1079 (9th Cir. 2007); Brittain v. Hansen, 451 F.3d 982, 987 (9th Cir. 2006).  The "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made," and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces."  Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).

A court employs a tiered analysis for determining qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 200-02 (2001); Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006); Brittain, 451 F.3d at 987.  However, lower courts need not strictly follow the tiered sequence in analyzing qualified immunity, but instead may dispose of the issue at step two

without addressing step one. Pearson v. Callahan, 555 U.S. 223, 241 (2009); Moss v. United States Secret Service, 572 F.3d 962, 968 n.5 (9th Cir. 2009). Under the first step, the court determines whether, "taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201; Phillips, 477 F.3d at 1079; Skoog, 469 F.3d at 1229. The first step is a question of fact. Dunn v. Castro, 621 F.3d 1196, 1199 (9t h Cir. 2010); Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009). If the answer is "no," then the inquiry ends and the plaintiff cannot prevail; if the answer is "yes," the court continues the analysis. See Saucier, 533 U.S. at 201; Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007); Johnson v. County of L.A., 340 F.3d 787, 793-94 (9th Cir. 2003).

Under the second step, the court determines "whether the right was clearly established," and applies an "objective but fact-specific inquiry." Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see Saucier, 533 U.S. at 202; Brittain, 451 F.3d at 988. The second step is a question of law. See Dunn, 621 F.3d at 1199; Tortu, 556 F.3d at 1085. The critical question is whether "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right." Saucier, 533 U.S. at 202; Phillips, 477 F.3d at 1079. Whether a right is clearly established must be "undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201; Skoog, 469 F.3d at 1229-30. In making this determination, the court considers the state of the law at the time of the alleged violation, but it is unnecessary for the precise conduct in question to have been previously held unlawful. See Anderson v. Creighton, 483 U.S. 635, 640 (1987); Inouye, 504 F.3d at 712. Further, the court considers the "information possessed" by the officer at the time of his conduct. See Hunter v. Bryant, 502 U.S. 224, 227 (1991); Anderson, 483 U.S. at 641; Edgerly v. City & County of San Francisco, 495 F.3d 645, 654 (9th Cir. 2007). If the officer could have reasonably, but mistakenly, believed that his conduct did not violate a clearly established constitutional right, then the officer will receive qualified immunity. See Saucier, 533 U.S. at 205-06; Skoog, 469 F.3d at 1229; Johnson, 340 F.3d at 794; Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). As a wholly objective inquiry, see Brittain, 451 F.3d at 988, the

"'subjective beliefs' of the actual officer are . . .irrelevant." <u>Inouye</u>, 504 F.3d at 712; <u>see</u>

<u>Anderson</u>, 483 U.S. at 641.  Thus, qualified immunity applies "if 'a reasonable officer could have

believed [the action] to be lawful, in light of clearly established law and the information the . . .

officer[] possessed.'" <u>Lawrence v. United States</u>, 340 F.3d 952, 956-57 (9th Cir. 2003); <u>see also</u>

<u>Hunter</u>, 502 U.S. at 227.

  2. <u>Right To Public Education</u>

  It has been recognized that there is no federal constitutional right to a public education.

<u>See</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 221 (1982); <u>San Antonio Indep. Sch. Dist. v. Rodriguez</u>, 411

U.S. 1, 35 (1973); <u>Smith v. Senigman Unified Sch. Dist.</u>, 664 F.Supp.2d 1070, 1074 (D. Ariz.

2009).  However, it is possible for state law to provide a protected property interest in a public

education and for such a property interest to receive Fourteenth Amendment procedural due

process protection.  <u>See</u> <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975); <u>Krainski v. State ex rel. Bd. of</u>

<u>Regents</u>, 616 F.3d 963, 970-71 (9th Cir. 2010).  In California, obtaining an education at a public

high school is a property interest that receives Fourteenth Amendment procedural due process

protection.  <u>See</u> <u>Coplin v. Conejo Valley Unified Sch. Dist.</u>, 903 F.Supp. 1377, 1381 (C.D. Cal.

1995); <u>Swany v. San Ramon Valley Unified School Dist.</u>, 720 F.Supp. 764, 773 (N.D. Cal.

1989); <u>Montoya v. Sanger Unified School Dist.</u>, 502 F.Supp. 209, 213 (E.D. Cal. 1980); <u>Butt v.</u>

<u>California</u>, 4 Cal.4th 668, 683, 685-86 (1992); <u>T.H. v. San Diego Unified School Dist.</u>, 122

Cal.App.4th 1267, 1286-87 (2004); <u>Granowitz v. Redlands Unified School Dist.</u>, 105

Cal.App.4th 349, 354-56 (2003).

  Among the protections afforded by the Fourteenth Amendment is that of an impartial

adjudicator.  <u>See</u> <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975); <u>Heyne v. Metro. Nashville Pub.</u>

<u>Schs</u>, 655 F.3d 556, 566-69 (6th Cir. 2011); <u>Newsome v. Batavia Local Sch. Dist.</u>, 842 F.2d 920,

926 (6th Cir. 1988); <u>Brewer by Dreyfus v. Austin Indep. Sch. Dist.</u>, 779 F.2d 260, 264 (5th Cir.

1985); <u>Gonzales v. McEuen</u>, 435 F.Supp. 460, 464 (C.D. Cal. 1977).  However, the impartiality

required does not equate to the criminal justice system's requirement of absolute neutrality.  <u>See</u>

<u>Jennings v. Wentzville R-IV Sch. Dist.</u>, 397 F.3d 1118, 1124-25 (8th Cir. 2005); <u>Riggan v.</u>

<u>Midland Indep. Sch. Dist.</u>, 86 F.Supp.2d 647, 656 (W.D. Tex. 2000).  "[D]ue process is not

necessarily violated when the school official who initiates, investigates, or prosecutes charges against a student plays a role in the decision to suspend the student." Heyne, 655 F.3d 568 (citing Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2, 826 F.2d 526, 529-30 (7th Cir. 1987); Brewer, 779 F.2d at 264); see also Jennings, 397 F.3d at 1124-25.  The impartiality of the adjudicator is presumed, and it is the student's burden to show bias.  See Withrow, 421 U.S. at 47; Jennings, 397 F.3d at 1124; Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992); Gorman v. University of Rhode Island, 837 F.2d 7, 15 (1st Cir. 1988).  A violation of the due process requirement of an impartial adjudicator may be shown by evidence that the adjudicator is actually biased, has a personal animus against a student, is otherwise unable to function fairly as a trier of fact, or the nature of his involvement in the case precludes impartiality.  See Heyne, 655 F.3d at 566-69; Newsome, 842 F.2d at 927 & n.5; Lamb, 826 F.2d at 530; Brewer, 779 F.2d at 264; Murray v. W. Baton Rouge Parish Sch. Bd., 472 F.2d 438, 443 (5th Cir. 1973); Riggan, 86 F.Supp.2d at 656-57; Gonzales, 435 F.Supp. at 464-65.

*Discussion*

Hill's first cause of action is somewhat ambiguous.  The action is a § 1983 claim whose caption identifies Fourteenth Amendment procedural due process and malicious prosecution.  It appears to the Court that there are two theories alleged under this cause of action.  First, the FAC alleges that the Defendants violated a Fourteenth Amendment procedural due process right.  Second, the FAC alleges the elements of a malicious prosecution claim based on the institution of the Juvenile Action.  Because the FAC fairly includes two theories of § 1983 liability, the Court will discuss each theory in its analysis.  Cf. Awabdy v. City of Adelanto, 368 F.3d 1062, 1070-72 (9th Cir. 2004) (holding that the district court erroneously overlooked allegations of direct constitutional violations, and also holding that a plaintiff may bring separate § 1983 claims for both malicious prosecution and a direct constitutional violation).

**a.     Malicious Prosecution**

A claim for malicious prosecution under § 1983 consists of allegations that: (1) the defendant prosecuted or caused to be prosecuted the plaintiff; (2) no probable cause existed for the prosecution; (3) the defendant acted with malice; (3) the defendant intended to deprive the

9

plaintiff of a constitutionally protected right; and (4) the prosecution terminated in favor of the plaintiff.  See Awabdy, 368 F.3d at 1066-68; see also Westwood v. City of Hermiston, 787 F.Supp.2d 1174, 1205 (D. Or. 2011).  Here, the FAC alleges that:  the Juvenile Action was initiated out of malice and a desire to cause expulsion, Bradford intended to deprive Hill of his Fourteenth Amendment right to an impartial adjudicator, the juvenile proceeding terminated in Hill's favor, and no probable cause existed for the juvenile prosecution.  See FAC ¶¶ 16, 17, 32, 34, 44, 48.  These allegations are sufficient to allege a § 1983 malicious prosecution claim.  See Awabdy, 368 F.3d at 1066-68; Westwood, 787 F.Supp.2d at 1205.

Bradford argues that the defense of probable cause applies to this case.  The existence of probable cause is an absolute defense to a malicious prosecution claim.[3]  See Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir. 2009).  However, the FAC expressly alleges that there was no probable cause for concluding that Hill committed sexual battery.  See FAC at ¶¶ 16, 34, 44.  This allegation is further supported by an explanation of some of the exculpatory information that was ignored by Bradford and omitted from his report.  See id. at ¶ 23.  The FAC does not disclose the presence of probable cause, and, given how the Court views allegations under a Rule 12(b)(6) motion, see Marceau, 540 F.3d at 919, there is no basis for the Court to conclude that Bradford had probable cause.  Accordingly, dismissal of the malicious prosecution claim on the basis of probable cause is improper at this time.

Bradford also contends that he is entitled to qualified immunity.  Bradford's conduct occurred between July 2010 and January 2011.  However, the cause of action for § 1983 malicious prosecution was well established prior to 2010.  See Awabdy, 368 F.3d at 1066; Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).  It would have been apparent to a reasonable officer that obtaining an indictment in the absence of probable cause, and on the basis of a false and misleading report that omitted exculpatory information, was a violation of the law.  Ovasapyan v. Frank, 405 Fed. Appx. 256, 258 (9th Cir. 2010) ("It is clear to a reasonable

---

[3]Bradford cites *Pierson v. Ray*, 386 U.S. 547, 557 (1967) for the proposition that probable cause and good faith are a defense in a § 1983 claim.  The § 1983 claim at issue in *Pierson*, however, was for false arrest, it was not for malicious prosecution or a procedural due process violation.  See id. at 550, 557.  Without further explanation from Bradford, it is unclear exactly how *Pierson* applies to this case.

1  officer that omitting material, exculpatory information from reports submitted to a district . . .

2  constitutes unlawful conduct."); Awabdy, 368 F.3d at 1066-68.  Accordingly, qualified immunity

3  on this claim is not appropriate at this time.[4]  See Saucier, 533 U.S. at 202; Ovasapyan, 405 Fed.

4  Appx. at 258; Awabdy, 368 F.3d at 1066-68; Lawrence, 340 F.3d at 956-57.

5      In sum, dismissal of Hill's malicious prosecution claim will be denied.

6               **b.      Fourteenth Amendment Procedural Due Process**

7      Contrary to Defendants' arguments, the FAC expressly alleges that: (1) California law

8  provides a property interest in a public education, and (2) the Fourteenth Amendment affords a

9  student the right to an impartial expulsion panel.  See FAC ¶¶ 18-19.  Hill's allegations are

10  consistent with the law.  California provides the right to a public education, and that right

11  constitutes a property interest that is protected by the Fourteenth Amendment.  See Coplin, 903

12  F.Supp. at 1381; Swany, 720 F.Supp. at 773; Montoya, 502 F.Supp. at 213; Butt, 4 Cal.4th at

13  683, 685-86; T.H., 122 Cal.App.4th at 1286-87; Granowitz, 105 Cal.App.4th at 354-56.  Further,

14  as expulsion is a significant deprivation, the Fourteenth Amendment procedural due process

15  clause requires *inter alia* that a student receive an impartial adjudicator for expulsion

16  proceedings.  See Heyne, 655 F.3d at 566-69; Newsome, 842 F.2d at 926; Brewer, 779 F.2d at

17  264; Gonzales, 435 F.Supp. at 464.  Accordingly, the FAC adequately identifies a protected

18  property interest and thus, adequately identifies the Fourteenth Amendment procedural due

19  process right to an impartial expulsion adjudicator.

20      In terms of the direct Fourteenth Amendment violation, the FAC alleges that Hill's right

21  to an impartial adjudicator was violated because of conduct that biased or prejudiced the

22  expulsion panel.  Specifically the FAC alleges that Bradford provided to Buchanan

23  Administrators a copy of his report, which he knew contained false information and was

24  misleading (in part due to omissions of information), made false and misleading communications

25  to Buchanan Administrators, and instituted a juvenile criminal proceeding against Hill that

26  lacked probable cause.  See FAC at ¶¶ 32, 47.  Importantly, the FAC alleges that the expulsion

27  proceedings were actually prejudiced, which the Court reads as an allegation that the expulsion

28

[4]The Court is not foreclosing Bradford from moving for qualified immunity at a later time.

tribunal became biased or prejudiced against Hill.[5]  See FAC at ¶¶ 20, 45.  The Court realizes

that there is a presumption in favor of neutrality, and significant evidence is necessary to

overcome such a presumption.  However, at this stage in the proceedings, the Court finds that the

allegations just raise a sufficient inference that Bradford's conduct improperly prejudiced the

expulsion panel against Hill.  The provision of false and misleading information through an

official police report could be particularly damaging.  Such a report could have the imprimatur of

objectivity and expertise since it is produced by a police officer whose function it is to investigate

such crimes.  Further, the police report's effect on the expulsion panel could be increased

following the initiation of the Juvenile Action, since that action was presumably based on

Bradford's report.  Viewing the allegations in favor of Hill as the non-moving party, see

Marceau, 540 F.3d at 919, the FAC contains sufficient allegations to suggest that the expulsion

panel was biased or prejudiced against Hill because of Bradford's conduct.  See FAC ¶¶ 20, 32,

45, 47.  Within the motion to dismiss framework, Hill has stated a plausible claim against

Bradford for violation of the Fourteenth Amendment procedural due process clause.[6]

As stated above, Bradford contends that he is entitled to qualified immunity, and his

conduct occurred between July 2010 and January 2011.  It was well established prior to 2010 that

the Fourteenth Amendment procedural due process clause protects a student's state created

property interest in a public education, see Goss, 419 U.S. at 574, and that California law created

such an interest.  See Coplin, 903 F.Supp. at 1381; Swany, 720 F.Supp. at 773; Montoya, 502

---

[5]As Bradford rightly contends, the expulsion hearing lasted 11 hours and Hill was given the opportunity to
present evidence and cross-examine witnesses through retained counsel.  However, the ability to call and examine
witnesses is separate and distinct from the requirement of an impartial adjudicator.  Cf. Newsome, 842 F.2d at 924-
28 (discussing separately various acts alleged to have violated procedural due process).  "Any other collateral
procedural guarantees are largely without meaning if the deciding tribunal has in some way adversely prejudged the
merits of the case."  Simard v. Board of Education of the Town of Groton, 473 F.2d 988, 993 (2d Cir. 1973).

[6]Bradford's motion and reply state that there is no right to attend the high school of one's choice, and the
reply states that Hill graduated from a public school; thus, Hill was not deprived of his right to a public education.  In
a different context from an expulsion, the Tenth Circuit has noted that there is no right under Colorado law to attend
the school of one's choice.  See Doe v. Bagan, 41 F.3d 571, 576 (10th Cir. 1994).  However, the City Defendants'
arguments are not adequately developed; there are no citations to cases or to allegations in the FAC, and the
argument amounts to little more than one or two sentences.  More importantly, the FAC does not allege that Hill
obtained a public education following his expulsion.  Given the underdeveloped state of the City Defendants'
argument, there is no need for the Court to address or analyze the issue at this time.  However, if Hill did graduate
from a public high school following his expulsion from Buchanan High School, the parties should be prepared to
address the effect, if any, that this graduation has on Hill's procedural due process claim.

F.Supp. at 213; Butt, 4 Cal.4th at 683, 685-86; T.H., 122 Cal.App.4th at 1286-87; Granowitz,

105 Cal.App.4th at 354-56.   Although it does not appear that the Ninth Circuit has expressly so

held, it was nevertheless well established that the right to an impartial adjudicator was part of the

procedural due process protections afforded to a student when his right to a public education was

threatened by expulsion or suspension of at least 10 days.   See Withrow, 421 U.S. at 47; Goss,

419 U.S. at 579-80; Newsome, 842 F.2d at 926; Brewer, 779 F.2d at 264; Gonzales, 435 F.Supp.

at 464; see also Heyne, 655 F.3d at 566-69 (discussing numerous pre-2010 cases).   Thus, a

reasonable officer would know that successful efforts to bias or prejudice an expulsion panel

against a student would violate the law.   Cf. Anderson, 483 U.S. at 640.   As applied to the

specific allegations in this case, the Court finds that a reasonable officer would know that

providing administrators with a police report that is known to be false and misleading,

communicating false and misleading information to administrators, and initiating a juvenile

wardship proceeding that is not based on probable cause, would improperly prejudice or bias the

expulsion proceeding.   That is, a reasonable officer would know that such conduct would violate

Hill's right to procedural due process.   Based on the allegations in the FAC and the arguments as

currently made and developed, qualified immunity will be denied at this time.   See Saucier, 533

U.S. at 202; Anderson, 483 U.S. at 640; Lawrence, 340 F.3d at 956-57.

Accordingly, dismissal of Hill's Fourteenth Amendment claim will be denied.[7]


**2.    2nd & 3rd Causes of Action - State Law Malicious Prosecution & Defamation**

*Defendants' Arguments*

Defendants argue *inter alia* that the two state law claims should be dismissed because

Hill failed to timely follow the claims presentation requirements of the California Government

Claims Act.   The FAC alleges that a request to file a late claim under Government Code § 911.4

was filed on November 16, 2011.   However, a request to file a late claim is not the same as

actually filing a claim.   Further, Hill's request to file a late claim was denied by the City in

December 2011, and Hill has not moved the Fresno County Superior Court for relief under

---

[7]The Court is not foreclosing Bradford from moving for qualified immunity at a later time.

1   Government Code § 946.6.[8]

2       *Plaintiff's Opposition*

3       Hill argues that the FAC contains allegations that excuse compliance with the

4   Government Claims Act.  A failure to comply with the claims presentation requirements is

5   excused when the public entity's conduct induces a reasonably prudent person to avoid seeking

6   legal advice or commencing litigation.  Here, the City Defendants induced Hill to avoid

7   commencing litigation by causing his expulsion from Buchanan High School during his senior

8   year amidst heinous but false charges.  The events of this case are the type that would cause a

9   reasonably prudent minor to delay seeking legal recourse until he could put the pieces of his life

10  back together.  Because of the City Defendants' actions, Hill was expelled for his senior year,

11  and was faced with the almost impossible task of how to graduate with a high school diploma.

12  This caused Hill to delay pursuing his legal rights.  Government Code § 946.6 protects minors

13  who fail to comply with the claims presentation requirements.  Although Hill turned 18 in the

14  relevant time frame and may not benefit from § 946.6, that section's underlying policies support

15  the presumption that Hill's noncompliance is excusable.  This case does not involve imprudent

16  behavior, but instead involves a student who was deprived of his education and forced to

17  reorganize his academic goals in the midst of sexual battery charges against him.  It is within the

18  discretion of the court to excuse Hill's failure to timely comply.

19      *Legal Standard*

20      As a prerequisite for filing suit for "money or damages" against a public entity in

21  California, the Government Claims Act requires presentation of a claim to the public entity.  See

22  Cal. Gov. Code § 945.4; State of California v. Superior Court, 32 Cal.4th 1234, 1240-44 (2004)

23  ("Bodde").  Lawsuits that seek monetary relief based on claims sounding in tort, as well as

24  claims sounding in contract, are lawsuits for "money or damages."  See City of Stockton v.

25  Superior Court, 42 Cal.4th 730, 738 (2007); Sparks v. Kern County Bd. of Supervisors, 173

26

27      [8]The City Defendants request that the Court take judicial notice of the City's denial of Hill's § 911.4

28  request.  See Doc. No. 34-3.  Hill has not filed an objection or response to the request for judicial notice, but does admit that the City denied his § 911.4 request.  See Doc. No. 35-1 at 9:17-18.  In the absence of an objection, and given Hill's admission, the Court will take judicial notice of the December 2011 rejection letter.

Cal.App.4th 794, 798 (2009).  Claims relating to a cause of action for death or injuries to the person or injuries to personal property must be presented no later than six months after the accrual of the cause of action.[9]  See Cal. Gov. Code § 911.2(a); Bodde, 32 Cal.4th at 1239.  The term "injury" means "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings, or estate, of such nature that it would be actionable if inflicted by a private person."  Cal. Gov. Code § 810.8; Holt v. Kelly, 20 Cal.3d 560, 564 n.4 (1978); Ovando v. County of Los Angeles, 159 Cal.App.4th 42, 63 n.7 (2008).  The Government Claims statutes "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim."  City of Stockton, 42 Cal.4th at 738; City of San Jose v. Superior Court, 12 Cal. 3d 447, 455 (1974).  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to a plaintiff maintaining an action against [a public entity], and thus [is] an element of the plaintiff's cause of action."  Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209 (2007); Bodde, 32 Cal.4th at 1240.  Accordingly, the failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity.  City of Stockton, 42 Cal.4th at 738; Bodde, 32 Cal.4th at 1239; Sparks, 173 Cal.App.4th at 738.  In federal court, the failure to allege facts that either demonstrate or excuse compliance with the Government Claims statutes will subject a state law claim to dismissal.  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Relatedly, California Government Code § 950.2 mandates that "a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred unless a timely claim has been filed against the employing public entity."  Fowler v. Howell, 42 Cal.App.4th 1746, 1750 (1996).  The California Legislature "included in the [Government] Claims Act what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's

---

[9]However, it is possible for a claimant to obtain leave to file a late claim with the public entity.  See Cal. Gov't Code § 911.4; County of Los Angeles v. Superior Court, 91 Cal.App.4th 1303, 1308 (2001); see also Ellis v. City of San Diego, 176 F.3d 1183, 1190 (9th Cir. 1999).

1  employment [must] have filed a claim against the public-entity employer pursuant to the

2  procedure for claims against public entities." Briggs v. Lawrence, 230 Cal. App. 3d 605, 612-13

3  (1991) (citing Cal. Gov. Code §§ 911.2, 945.4, 950.2, 950.6(a)). In federal court, the failure to

4  allege compliance with the Government Claims statutes with respect to a public employee will

5  subject state law claims to dismissal. Karim-Panahi, 839 F.2d at 627.

6      *Discussion*

7      The FAC alleges that Hill submitted an application to file a late claim on November 16,

8  2011. See FAC ¶¶ 62, 118. Of course, as the City Defendants point out, filing a request for

9  permission to file a late claim does not constitute the actual filing of a claim. Moreover, the City

10 did not grant Hill permission to file a late claim. See Doc. No. 34-3. Thus, Hill has failed to

11 comply with the presentation requirements of the Government Claims Act.

12     A complaint may survive dismissal by alleging facts that excuse compliance with the

13 Government Claims Act. See Mangold, 67 F.3d at 1477. Hill essentially argues that compliance

14 should be excused because of the City Defendants' conduct and because he was a minor who had

15 to deal with significant adversity and upheaval in his life. The Court cannot agree.

16     First, Hill's reliance on his minority status does not provided sufficient grounds for relief.

17 Government Code § 911.6 requires a public entity to grant permission to file a late claim when

18 the claimant was a minor for the entire time set by § 911.2. See Cal. Gov. Code § 911.6(c)(2).

19 However, Hill candidly admits that he turned 18 prior to the expiration of § 911.2's six month

20 limitations period. See Doc. No. 35-1 (Opposition) at 9:7-11. Because Hill was not a minor for

21 the entire six month period, Hill's minority did not obligate the City to grant him leave to file a

22 late claim.

23     Second, a public entity may be estopped from asserting the limitations period as a defense

24 in some circumstances. Generally, in order to establish estoppel, a plaintiff must show: (1) the

25 public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) the

26 plaintiff was ignorant of the true state of facts, and (4) the plaintiff relied upon the conduct to his

27 detriment. K.J. v. Arcadia Unified School Dist., 172 Cal.App.4th 1229, 1240 (2009). Estoppel

28 "most commonly results from misleading statements about the need for or advisability of a

claim," but may also "be established by acts of intimidation or violence that are intended to prevent the filing of a claim," or by conduct that would induce a reasonable person to delay taking action.  See John R. v. Oakland Unified School Dist., 48 Cal.3d 438, 445 (1989); Benner v. Industrial Acc. Com., 26 Cal.2d 346, 349 (1970); K.J., 172 Cal.App.4th at 1240; Bertorelli v. City of Tulare, 180 Cal.App.3d 432, 440 (1986).  Here, the Court sees no conduct that suggests estoppel applies.  There are no acts of intimidation or threats of violence and there are no allegations regarding misleading statements or misrepresentations.  Hill argues that the City Defendants' conduct in causing the expulsion induced Hill to delay.  However, the City Defendants did not expel Hill, the causes of action that Hill relies upon did not accrue until after the City Defendants' conduct had ended,[10] and there is no indication that the City Defendants intended for their conduct to cause Hill to delay pursuing causes of action that had not yet accrued.  Moreover, Hill had legal representation both at his expulsion hearing and for his Fresno County Superior Court writ petition to reverse the expulsion.  See Doc. No. 32-3 Ex. A.  It is apparent that Hill consulted legal counsel regarding his rights following his expulsion.  Cf. Bertorelli, 180 Cal.App.3d at 440 (noting that estoppel may apply when conduct causes a person to forego seeking legal advice).  Neither the FAC nor the opposition indicate that estoppel applies in this case.

Finally, the argument that Hill should be relieved from the claims presentation requirements because of what arguably amounts to excusable neglect is not persuasive.  Judicial relief from the claims presentation requirements is provided under Government Code § 946.6.  That section in relevant part reads:

> If an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4. The proper court for filing the petition is a superior court that would be a proper court for the trial of an action on the cause of action to which the claim relates.

Cal. Gov. Code § 946.6(a).  Although the Ninth Circuit has not interpreted § 946.6, most California District Courts interpret § 946.6(a) as meaning that only state superior courts, and not federal district courts, may grant relief from Government Code § 945.4.  See, e.g., Maximo v.

---

[10]Hill's causes of action accrued either at expulsion or termination of the Juvenile Action, i.e. January 2011.

San Francisco Unified Sch. Dist., 2011 U.S. Dist. LEXIS 30225, *17-*18 (N.D. Cal. Mar. 21, 2011); Hickenbottom v. City of San Rafael, 2010 U.S. Dist. LEXIS 109007, *5 (N.D. Cal. Oct. 13, 2010); Ludavico v. Sacramento County, 2009 U.S. Dist. LEXIS 22519, *15-*16 (E.D. Cal. Mar. 11, 2009); Ovando v. City of Los Angeles, 92 F.Supp.2d 1011, 1022 (C.D. Cal.2000); Hernandez v. McClanahan, 996 F.Supp. 975, 978 (N.D. Cal.1998); Luers v. Smith, 941 F.Supp. 105, 108 (C.D. Cal.1996).  Some courts have reached a contrary conclusion and have held that both state superior courts and federal district courts may grant relief pursuant to § 946.6.  See Rahimi v. AMTRAK, 2009 U.S. Dist. LEXIS 59423, *9-*12 (N.D. Cal. June 30, 2009); Perez v. Escondido, 165 F. Supp. 2d 1111, 1113 (S.D. Cal. 2001).  Rahimi relied on Perez in reaching its conclusion, and Perez in turn relied in part on the language of § 946.6.  The language of § 946.6 that Perez relied upon predated amendments that went into effect in 2002.  Prior to 2002, § 946.6(a) in pertinent part stated that the "proper court for filing the petition is a court which would be a competent court for the trial of an action on the cause of action to which the claim relates and which is located in a county or judicial district which would be a proper place for the trial of the action . . . ."  Cal. Gov. Code § 946.6(a) (2001 ed.) (emphasis added); Perez, 165 F.Supp. at 1113.  In distinguishing Hernandez, the Perez court stated that it "finds no basis in the language of section 946.6" for Hernandez's conclusions since "[n]othing in the language of section 946.6 precludes a federal court from adjudicating the merits of a petition for relief.  The only provision pointed to either of the courts in Luers and Hernandez is a venue provision."  Perez, 165 F.Supp.2d at 1115; see Rahimi, 2009 U.S. Dist. LEXIS 59423 at *10.  However, since 2002, the language of § 946.6(a) has become more specific.  The "proper court" for obtaining relief is no longer "a court," rather it is now "a superior court."  See Cal. Gov. Code § 946.6(a). Section 946.6(a) could have been left unamended with respect to specifically identifying the proper court, but it was changed.  Since § 946.6(a) was amended to identify a specific court, and that court is the state superior court, this Court will follow the majority position and conclude that only state superior courts have been given the authority to grant relief pursuant to

§ 946.6(a).[11]  See Maximo, 2011 U.S. Dist. LEXIS 30225 at *17-*18; Hickenbottom, 2010 U.S. Dist. LEXIS 109007 at *5; Ludavico 2009 U.S. Dist. LEXIS 22519 at *15 n.8; Ovando, 92 F.Supp.2d at 1022; Hernandez, 996 F.Supp. at 978; Luers, 941 F.Supp. at 108.  Because this Court does not have authority to grant relief under § 946.6(a), any argument regarding excusable neglect is unavailing.

Because the FAC does not show compliance, or an excuse from complying, with the Government Claims Act claims presentation requirements, and since it appears that allowing amendment at this time would be futile, dismissal of the state law claims against the City Defendants will be without leave to amend.

**II.** **County Defendants' Motion**

    **1.** **1st Cause of Action - 42 U.S.C. § 1983**

    *Defendants' Argument*

The County Defendants make several arguments against this claim.  First, the FAC does not cite any due process right that Hill has under any source of law that was violated by the County Defendants.  The allegations that the juvenile petition prejudiced the expulsion proceedings are vague, and the record indicates that Hill had ample opportunity to cross-examine the witnesses against him.  Second, assuming that an identifiable right was violated, there are insufficient allegations that the County Defendants proximately caused a deprivation of the right.  There are no facts alleged that show actual participation by the County Defendants.  Similarly, there are no allegations that identify any specific communications, and the allegations are simply speculative, unfounded accusations.  Further, although the FAC alleges that the County Defendants did not inform school administrators that no probable cause for charges existed, the County Defendants did not owe any constitutional duty to so inform school administrators.

---

[11] In *Garber v. City of Clovis*, 698 F. Supp. 2d 1204 (E.D. Cal. 2010), this Court denied relief under § 946.6 because the plaintiff had not met the substantive requirements of § 946.6.  The Court performed this analysis because the parties appeared to assume that the Court had authority and because some case law supported that position.  See id. at 1210.  Additionally, since the § 946.6 motion was denied, the result would have been the same irrespective of the Court's authority.  Here, however, the City expressly points out that the court to which Hill must seek relief is the superior court and that the judicial petition procedure cannot be bypassed.  See Doc. No. 38 (Reply) at 2:11-19.

1   Finally, various immunities apply.  The FAC's allegations regarding interviewing another

2   witness and issuing a records subpoena do not defeat immunity.  Obtaining records and

3   conferring with witnesses after the commencement of a criminal proceeding is conduct that is

4   linked to the judicial process, and, so long as such conduct is not part of pre-trial evidence

5   gathering for a separate case, is subject to absolute prosecutorial immunity, or at least qualified

6   immunity.  Further, allegations of improper motive is immaterial because absolute prosecutorial

7   immunity applies irrespective of bad faith or improper motive by the prosecutor.  Additionally,

8   because Egan is alleged to have acted in her role as the District Attorney, Eleventh Amendment

9   immunity applies.

10          *Plaintiff's Opposition*

11          Hill argues that dismissal is not appropriate.  First, the FAC identifies a property interest

12   in a public education that is provided by California law and is entitled to Fourteenth Amendment

13   procedural due process protection.  That there may have been an opportunity to cross-examine

14   witnesses and present evidence does not matter because the tribunal was improperly biased

15   through false and misleading information.  Second, the County Defendants personally

16   participated in the constitutional deprivation.  The FAC alleges that the individual Defendants

17   intentionally prejudiced the expulsion proceedings and regularly communicated false and

18   misleading information to Buchanan Administrators.  Third, immunity does not apply in this

19   case.  Prosecutorial immunity does not apply because the acts complained of are not intimately

20   associated with the judicial process.  Behind the scenes communications with Buchanan

21   Administrators are not included within the scope of employment of a public prosecutor and are

22   not part of any criminal proceeding.  Similarly, the investigative conduct of interviewing

23   witnesses and issuing subpoenas was not done in furtherance of a judicial proceeding.  That is,

24   the County Defendants were not "evidence gathering" for the crime charged, but were instead

25   engaging in "investigative activities" into the collateral matter of the expulsion proceeding.

26   Further, qualified immunity is not appropriate because the procedural due process right at issue

27   was clearly established, and the conduct was intended to violate that right.  Finally, Eleventh

28   Amendment immunity does not apply because Egan's conduct was investigative in nature, and

1   thus exceeded her prosecutorial functions.

2   *Legal Standard*

3        1.     Absolute Prosecutorial Immunity

4        District attorneys are entitled to absolute prosecutorial immunity for conduct that is

5   "intimately associated with the judicial phase of the criminal process." Van de Kamp v.

6   Goldstein, 129 S.Ct. 855, 860 (2009); Botello v. Gammick, 413 F.3d 971, 975 (9th Cir. 2005).

7   The guiding principle is that "acts undertaken by a prosecutor in preparing for the initiation of

8   judicial proceedings or for trial, and which occur in the course of his role as an advocate for the

9   state, are entitled to the protections of absolute immunity." Buckley v. Fitsimmons, 509 U.S.

10  259, 273 (1993); KRL v. Moore, 384 F.3d 1105, 1113 (9th Cir. 2004).  This immunity applies

11  even if a prosecutor engages in an improper conspiracy or acts with a malicious or otherwise

12  improper intent.  See Roe v. City & County of San Francisco, 109 F.3d 578, 583-84 (9th Cir.

13  1997); McCarthy v. Mayo, 827 F.2d 1310, 1315 (9th Cir. 1987); Ashelman v. Pope, 793 F.2d

14  1072, 1078 (9th Cir. 1986).  However, a "prosecutor's administrative duties and those

15  investigatory functions that do not relate to an advocate's preparation for the initiation of a

16  prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley, 509 U.S.

17  at 274.  "[W]hen prosecutors perform administrative or investigative functions, only qualified

18  immunity is available." Botello, 413 F.3d at 976.  "The official seeking absolute immunity bears

19  the burden of showing that such immunity is justified for the function in question," and the

20  presumption is that qualified immunity is sufficient.  Buckley, 509 U.S. at 269, 273; Milstein v.

21  Cooley, 257 F.3d 1004, 1008 (9th Cir. 2001).  "To determine whether an action is judicial,

22  investigative, or administrative, [courts] look to the nature of the function performed, not the

23  identity of the actor who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997); see KRL,

24  384 F.3d at 1113.  A prosecutor's decision to prosecute and his initiation of a prosecution are

25  protected by absolute immunity.  Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Milstein, 257

26  F.3d at 1008; Roe, 109 F.3d at 584.  Also, preparation for trial "may require the obtaining,

27  reviewing, and evaluating of evidence." Imbler, 424 U.S. at 431 n.33; see also KRL, 384 F.3d at

28  1113.  As such, "prosecutors are absolutely immune from liability for gathering additional

1  evidence after probable cause is established or criminal proceedings have begun when they are

2  performing a quasi-judicial function."  KRL, 384 F.3d at 1111; Broam v. Bogan, 320 F.3d 1023,

3  1030 (9th Cir. 2003).  However, obtaining or gathering evidence as part of a collateral

4  investigation into new crimes is not covered by prosecutorial immunity.  See KRL, 384 F.3d at

5  1113-14.

6              2.      Eleventh Amendment Immunity

7        States, governmental entities that are considered "arms of the state," and state officials

8  who are sued in their official capacities are entitled to Eleventh Amendment immunity and are

9  not considered "persons" for purposes of 42 U.S.C. § 1983.  See Will v. Michigan Dep't of State

10 Police, 491 U.S. 58, 70-71 (1989); Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2006).

11 "California [district attorneys] serve both state and county functions:  They act as state officials,

12 and so possess Eleventh Amendment immunity, when 'acting in [their] prosecutorial capacity.'"

13 Del Campo v. Kennedy, 517 F.3d 1070, 1073 (9th Cir. 2008); see also Weiner v. San Diego

14 County, 210 F.3d 1025, 1031 (9th Cir. 2000).  Generally, district attorneys act in a prosecutorial

15 capacity when they are "preparing to prosecute [or are] prosecuting criminal violations."  Pitts v.

16 County of Kern, 17 Cal.4th 340, 362 (1998).  "District attorneys performing investigatory and

17 other functions, however, are officers of the county."  Ceballos v. Garcetti, 361 F.3d 1168, 1183

18 (9th Cir. 2004), reversed and remanded on other grounds, 547 U.S. 410 (2006).  "[T]he issue

19 whether an officer is acting as a prosecutor for purposes of determining absolute or qualified

20 immunity in § 1983 actions involves the same considerations as the issue whether he is acting as

21 a prosecutor for purposes of determining sovereign immunity under the Eleventh Amendment."

22 Ceballos, 361 F.3d at 1183 n.11.  Accordingly, § 1983 absolute prosecutorial immunity cases

23 may guide Eleventh Amendment immunity cases, and vice versa.  See id.; Ambrose v. Coffey,

24 696 F.Supp.2d 1119, 1137 (E.D. Cal. 2010).

25       *Discussion*

26       As explained above, the FAC fairly includes two theories of § 1983 liability – malicious

27 prosecution and Fourteenth Amendment procedural due process violation.  The Court will

28 analyze each theory separately.  See Awabdy, 368 F.3d at 1070-72.

1

       **a.**    **Malicious Prosecution**

2        The crux of a malicious prosecution claim is that a defendant initiated a prosecution

3 against a plaintiff with malice and without probable cause.  See Awabdy, 368 F.3d at 1066-68;

4 Westwood, 787 F.Supp.2d at 1205.  However, as stated above, a prosecutor's decision to

5 prosecute, and her initiation of a prosecution, are protected by absolute immunity.  See Buckley,

6 509 U.S. at 273-74 & n.5; Imbler, 424 U.S. at 431; Milstein, 257 F.3d at 1008; Roe, 109 F.3d at

7 583-84.  Allegations of conspiracy and improper motive do not defeat this immunity.  See Roe,

8 109 F.3d at 584; McCarthy, 827 F.2d at 1315; Ashelman, 793 F.2d at 1078.  Thus, irrespective of

9 allegations of conspiracy and improper motive, the County Defendants are entitled to absolute

10 immunity for initiating and prosecuting the Juvenile Action against Hill.  Dismissal of Hill's

11 malicious prosecution claim without leave to amend is appropriate.[12]  See Imbler, 424 U.S. at

12 427-28, 430-31; Milstein, 257 F.3d at 1008 & n.3; Ashelman, 793 F.2d at 1078.

13

       **b.**    **Procedural Due Process**

14        As discussed above, the argument that the FAC identifies no constitutionally protected

15 right is not persuasive.  Hill had a Fourteenth Amendment protected property interest in public

16 education, which entailed the right to an impartial adjudicator during expulsion proceedings.  See

17 Heyne, 655 F.3d at 566-69; Newsome, 842 F.2d at 926; Brewer, 779 F.2d at 264; Swany, 720

18 F.Supp. at 773; Gonzales, 435 F.Supp. at 464-65; Butt, 4 Cal.4th at 683, 685-86; T.H., 122

19 Cal.App.4th at 1286-87.  Further, the argument that Hill had an 11 hour expulsion hearing, was

20 represented by counsel, and could call and examine witnesses does not address the alleged denial

21 of an impartial adjudicator.  See Newsome, 842 F.2d at 924-28; Simard, 473 F.2d at 993.

22        Hill identifies several actions by the County Defendants that allegedly prejudiced the

23 expulsion proceedings:  (1) providing Bradford's false and misleading report to Buchanan

24 Administrators; (2) filing the Juvenile Action against Hill; (3) omitting key/exculpatory

25 information from the juvenile petition; (4) omitting key/exculpatory information during the

26

27

28
       [12]Dismissal of this claim on the basis of Eleventh Amendment immunity is also appropriate as to Egan, who is the Fresno County District Attorney.  See Weiner v. San Diego County, 210 F.3d 1025, 1031 (9th Cir. 2000) ("We conclude that a California district attorney is a state officer when deciding whether to prosecute an individual.").

course of communications with Buchanan Administrators;[13] (5) informing Buchanan Administrators of the Juvenile Action; (6) conducting "rogue investigations" by subpoenaing school records related to Hill and his brother; and (7) seeking out and conducting interviews of witnesses other than those identified by Bradford, including Rice's father.[14]  See FAC at ¶¶ 17, 20, 26, 30, 31, 32, 34, 36, 37, 39, 43.[15]  The Court will discuss the adequacy of these actions for establishing a procedural due process violation.

><u>1.</u>    <u>Initiating Juvenile Action & Omission Of Facts From Juvenile Petition</u>

As discussed above, initiating and actually prosecuting the Juvenile Action is conduct covered by absolute prosecutorial immunity, irrespective of any evil or improper motive.  <u>See</u> <u>Buckley</u>, 509 U.S. at 274; <u>Imbler</u>, 424 U.S. at 431; <u>Milstein</u>, 257 F.3d at 1008; <u>Roe</u>, 109 F.3d at 583-84; <u>Ashelman</u>, 793 F.2d at 1078.  Similarly, since the juvenile petition was the vehicle for initiating the Juvenile Action, and since the decision to omit certain information from the juvenile petition is a matter of prosecutorial judgment and discretion that fits within the prosecutor's role as advocate for the state, the juvenile petition is shielded by prosecutorial immunity.  <u>See</u> <u>Kalina</u>, 522 U.S. at 129-30 (noting that a prosecutor's decision about which facts to include in a certification are protected by absolute immunity); <u>Broam</u>, 320 F.3d at 1030 (citing

---

[13]The FAC alleges that: "The individual Defendants regularly communicated false and misleading information to [Buchanan Administrators], including Athletic Director Chris Hansen, Principal Ricci Ulrich, and administrators Denver Stairs and David Cohen.  This regular communication of false and misleading information was fabricated in Defendant Bradford's predeterminations, the [Juvenile] Petition signed by Defendants Smith and Egan, the criminal charges filed against Hill which completely ignored relevant facts and legal elements of the crime charged, and the rogue investigations conducted by Defendants Egan and Smith."  FAC ¶ 43.

[14]As can be seen, the FAC alleges that Buchanan Administrators received the improper information, but does not expressly allege that the expulsion panel received the information.  If the expulsion panel never received the improper, prejudicial information, then the expulsion panel would not have been prejudiced by the Defendants.  <u>Cf.</u> <u>Cohen v. Fred Meyer, Inc.</u>, 686 F.2d 793, 796 (9th Cir. 1982) (holding that the individual decision maker(s) must know of protected conduct for purposes of a retaliation claim).  Given the allegation of an actual Fourteenth Amendment violation and a proceeding that was actually prejudiced, <u>see</u> FAC ¶¶ 19, 20, 47, the Court believes that the allegations can be fairly read to mean that the expulsion panel was aware of the improper information.  However, if Hill chooses to file an amended complaint, he will be required to expressly allege that the expulsion panel received the improper, prejudicial information from the Defendants.

[15]This conduct was allegedly done by either Smith, Egan and Smith, or "the individual Defendants."  There are only three individual Defendants in this case, so the Court reads a reference to "the individual Defendants" to mean Egan, Smith, and Bradford.  Given the small number of individual Defendants in this case, and given the limited times that the phrase "individual Defendants" is used, the Court believes that there is sufficient notice to Egan and Smith regarding their conduct when the term "individual Defendants" is used.

and parenthetically characterizing *Kalina*); McKeon v. Daley, 101 F.Supp.2d 79, 88 (N.D. N.Y

2008); see also Ireland v. Tunis, 113 F.3d 1435, 1447 (6th Cir. 1997).  Accordingly, this conduct

is covered by absolute immunity and thus, is not actionable.[16]  See id.

> ### 2.     "Rogue Investigation" Through Subpoena

The subpoena was issued after the Juvenile Action had begun.  See FAC ¶¶ 33, 37.  The

subpoena requested:  "All Clovis Unified School Records from Buchanan High School involving

complaints on Preston Hill regarding incidents occurring between 1/1/2010 and 7/31/2010 and

any other incidents," and also "demanded any reports or documents involving hazing activities

by members of the Buchanan wresting team in which Preston Hill or his brother Spencer Hill

were involved between 2007 and 1/31/2010."  FAC ¶ 37.  However, "prosecutors are absolutely

immune from liability for gathering additional evidence after probable cause is established *or

criminal proceedings have begun* when they are performing a quasi-judicial function."  KRL,

384 F.3d at 1111 (emphasis added); Broam, 320 F.3d at 1030; see also Imbler, 424 U.S. at 431

n.33.  It has been held that when a prosecutor subpoenas medical records, either in connection

with presenting evidence to a grand jury or after a criminal prosecution has begun, such conduct

falls within the traditional prosecutorial function of marshaling evidence and advocating for the

state.  See Tiscareno v. Frasier, 2008 U.S. Dist. LEXIS 80135, *31 (D. Utah Sept. 29, 2008);

Thomas v. County of Putnam, 262 F.Supp.2d 241, 249 (S.D. N.Y. 2003).  While the January

2011 subpoena in this case was not for medical records, the subpoena sought records and

information that was manifestly relevant to the prosecution of Hill.  Seeking and obtaining

evidence of similar conduct (especially wrestling team hazing) related to Hill, as well as any

recent disciplinary problems related to Hill, could help evaluate the credibility of Hill, impeach

Hill's testimony, or help to establish Hill's intent, motive, knowledge, or lack of mistake.  The

Court sees no material distinction between the subpoenas in *Tiscareno* and *Thomas* and the

single subpoena in this case since both subpoenas sought information that was clearly relevant to

the crimes at issue.  Accordingly, absolute immunity applies to Smith seeking school disciplinary

---

[16]Egan would also be entitled to Eleventh Amendment immunity for this conduct.  See Ceballos, 361 F.3d
at 1183 n.11; Weiner, 210 F.3d at 1031.

1    and hazing records relating to Hill through subpoena.  See Imbler, 424 U.S. at 431 n.33;

2    KRL, 384 F.3d at 1111; Broam, 320 F.3d at 1030; Tiscareno, 2008 U.S. Dist. LEXIS 80135 at

3    *31; Thomas, 262 F.Supp.2d at 249.

4         Alternatively, qualified immunity for Smith is appropriate.[17]  The Court is aware of no

5    Ninth Circuit cases that discuss records subpoenas issued by assistant district attorneys after

6    criminal proceedings have begun.  Ignoring any subjective intent of Smith, see Inouye, 504 F.3d

7    at 712; Brittain, 451 F.3d at 988, and given the inherent relevance of the records requested, and

8    considering cases such as Imbler, Broam, and Tiscareno, a reasonable prosecutor in Smith's

9    position could reasonably believe that issuing the records subpoena would not violate the law.

10   See Lawrence, 340 F.3d at 956-57; see also Imbler, 424 U.S. at 431 n.33; KRL, 384 F.3d at 1111;

11   Broam, 320 F.3d at 1030; Tiscareno, 2008 U.S. Dist. LEXIS 80135 at *31; Thomas, 262

12   F.Supp.2d at 249.

13        With respect to the part of the subpoena that sought information related to Hill's brother

14   Spencer, the inherent relevance of such a request is not as clear.  Hill and his brother are separate

15   individuals, and the Juvenile Action was only against Hill.  This aspect of the subpoena is similar

16   to the search warrant in KRL.  In KRL, a search warrant was obtained by a prosecutor after

17   criminal proceedings had begun.  See KRL, 384 F.3d at 1108-09.  The search warrant sought

18   evidence that was relevant to the charged crimes, but also sought evidence that was relevant to as

19   yet uncharged crimes that were being investigated.  See id. at 1109.  The Ninth Circuit found that

20   absolute immunity was appropriate with respect to the part of the search warrant that sought

21   evidence related to the crimes charged, but denied absolute immunity for the part of the warrant

22   that sought evidence related to the uncharged crimes that were under investigation.  See id. at

23   1111-14.  Here, the subpoena of Preston Hill's records is analogous to the KRL search warrant –

24   it appears to be seeking evidence that is both relevant and irrelevant to the Juvenile Action.  Cf.

25   id.  Specifically, the subpoena of records relating to Spencer Hill appears to be irrelevant to the

26   Juvenile Action, and thus, appears to be a collateral investigation.  See id.  Accordingly, in light

27   of KRL, absolute immunity with respect to subpoenaing Spencer Hill's records is not appropriate

28

_____

[17]The allegations regarding the subpoena are made against Smith only.  See FAC ¶¶ 37, 38.

at this time.  See id.

However, that absolute immunity is inappropriate does not end the analysis.  It is unclear to the Court how seeking hazing records concerning Spencer Hill would prejudice the expulsion proceeding against Preston Hill.  The focus of the expulsion proceeding would be on Hill and Hill's conduct.  There are no allegations that any documents related to Spencer Hill were introduced at the expulsion hearing, or that Spencer Hill was in any way discussed at the expulsion hearing.  Simply put, Preston Hill is a separate and distinct individual from his brother Spencer.  Seeking documents related to Spencer Hill is too far afield to reasonably prejudice the expulsion proceedings against Preston Hill.  Accordingly, subpoenaing hazing documents related to Spencer Hill does not violate Preston Hill's Fourteenth Amendment procedural due process right to an impartial tribunal.

Alternatively, there have been no cases cited that have a similar fact pattern, and the Court has found none.  Ignoring any subjective motives, see Inouye, 504 F.3d at 712; Brittain, 451 F.3d at 988, and considering the distinction between Preston Hill and Spencer Hill, the Court cannot say that a reasonable prosecutor would know that subpoenaing possible hazing records relating to Spencer Hill would violate Preston Hill's constitutional rights.  See Lawrence, 340 F.3d at 956-57.  That is, qualified immunity for subpoenaing records relating to Spencer Hill is appropriate.  See id.

### 3.    "Rogue Investigations" Through Interviewing Witnesses

The Ninth Circuit has held that, when analyzing a witness interview, a functional analysis that examines the character of the witness interview is applied.  Genzler v. Longanbach, 410 F.3d 630, 638, 640 (9th Cir. 2005).  "Witness interviews may serve either an investigative or an advocacy related function . . . ."  Id. at 638.  If the interview served an advocacy related function that is intimately associated with the judicial phase, then absolute immunity applies.  See id.  If the interview served a "police-type investigative" function, then absolute immunity does not apply.  See id.  Further, whether a witness is interviewed before or after the criminal charges have been filed is a relevant, though not determinative, factor in determining the function of an interview.  See id. at 639-40.

27

Here, despite alleging that improper "interviews" occurred, the FAC identifies only one witness who was interviewed, Rice's father.  The FAC does not allege precisely when Rice's father was interviewed, but the FAC generally alleges that "rogue investigations" occurred "before and after the charges against Hill were filed on August 25, 2010."  FAC ¶ 36.  Further, there are no allegations regarding the nature of the interview or the questions asked of Rice's father.  Thus, there are insufficient facts alleged for the Court to determine the character of this interview.  Without facts that indicate that the character of the interview was quasi-judicial, the Court cannot conclude that absolute immunity applies.  See Genzler, 410 F.3d at 640; Broam, 320 F.3d at 1030.

Nevertheless, the Court fails to see how interviewing the victim's father could in any way prejudice the expulsion proceeding.  Considering the nature of the allegations by Rice against Hill, interviewing the minor-victim's father seems like something that would be done as a matter of course.  An interview of the minor-victim's father would gather insight into *inter alia* the wishes of the victim, the family's version of events, the credibility of the victim, and the ability of the victim to testify.  It can be assumed that the Rice Family's view of events  would be quite different from Hill's view, that Rice's parents would be extremely angry, and that Rice's parents would have questions regarding the criminality of Hill's conduct.  It is obvious that the Buchanan Administrators would know this.  Therefore, interviewing the minor-victim's father would not violate Hill's constitutional rights.

Alternatively, the Court is aware of no cases with a similar fact pattern, and none have been cited to the Court.  Irrespective of any improper subjective motive by Egan and Smith, see Inouye, 504 F.3d at 712; Brittain, 451 F.3d at 988, and considering the nature of the allegations made by Rice, a reasonable prosecutor would not know that interviewing Rice's father would violate Hill's Fourteenth Amendment procedural due process right to an impartial adjudicator.  See Lawrence, 340 F.3d at 956-57.  Accordingly, Egan and Smith are entitled to qualified immunity for interviewing Rice's father.[18]

---

[18] Because the FAC only identifies one witness, the Court confined its analysis to that witness.  If Hill is aware of other witnesses who were interviewed, and if those interviews may reasonably be alleged to be non-quasi-judicial in nature, see Genzler, 410 F.3d at 640, then Hill may amend his complaint to identify those witnesses.

1             4.    **Informing Administrators Of The Existence Of The Juvenile Action**

2      The FAC alleges that, in order to prejudice the expulsion proceedings, "the 'individual

3 Defendants' informed school administrators of Case Number 10CEJ600955-1." FAC at ¶ 34.

4 However, California law provides in part that the superintendent or designee of the school

5 district where a minor is enrolled or attending school has the right to inspect a juvenile

6 delinquency case file. See Cal. Wel. & Inst. Code § 827(a)(1)(G). Thus, California law provides

7 for school administrators to be informed of the existence of juvenile proceedings. Without

8 further allegations by Hill, the FAC does not sufficiently show that disclosing the existence of the

9 Juvenile Action was improper.[19]

10             5.    **Omitting Information During Communications With Administrators**

11      The FAC alleges that the County Defendants did not inform Buchanan Administrators

12 that: (1) there was no evidence that Hill had no intent to commit the crime; (2) the contact

13 between Hill and Rice was consensual as part of a practice and not against Rice's will; (3) Hill

14 did not unlawfully restrain Rice; and (4) there was no probable cause to support the charges. See

15 FAC ¶¶ 30, 34. The County Defendants argue that there was no constitutional duty for them to

16 disclose anything to the Buchanan Administrators. Hill does not respond to this argument, and

17 the Court itself does not see a constitutional duty to disclose. Given the failure of Hill to address

18 and establish a duty, the omission of facts from communications with the Buchanan

19 Administrators is not actionable.[20]

20             6.    **Providing Bradford's Report & Communicating With Administrators**

21      The FAC alleges that: Egan and Smith produced Bradford's police report to Buchanan

22 Administrators, Egan and Smith knew that the information in the report was false, misleading,

23 and written in accordance with a predetermination, Egan and Smith produced the report with the

24

25     [19]The County Defendants have not expressly addressed this allegation in arguing for immunity. Without

26 express arguments, the Court cannot tell whether a form of immunity applies. For now, it is sufficient to hold that the current allegation does not form the basis of a constitutional violation. Because the parties have not sufficiently explored this allegation, dismissal will be with leave to amend. If Hill amends his complaint and continues to rely on

27 this allegation, the County Defendants may reassert any immunity that they believe is applicable.

28     [20]However, to the extent that the allegations can be read as relating to the contents of Bradford's report, the Court will view the omissions as part of what made Bradford's report false and misleading. The production of Bradford's report is discussed below.

intent of prejudicing the expulsion proceedings, and the expulsion proceedings were prejudiced by this conduct.  See FAC at ¶¶ 19, 20, 26, 28, 29, 47.  As discussed above, the provision of false and misleading information through an official police report prior to an expulsion hearing could be particularly damaging to a student.  Such a report could have the imprimatur of objectivity and expertise since it is written by a police officer whose job it is to investigate such crimes.  The report's effect could be further amplified if it is also provided to administrators by district attorneys, whose job it is to evaluate evidence and to obtain convictions.  At this stage in the proceedings, and given the Rule 12(b)(6) framework, see Marceau, 540 F.3d at 919, the Court believes that Hill's claim that Egan and Smith's provision of Bradford's false and misleading report (with knowledge of its false and misleading nature) states a claim for violation of the Fourteenth Amendment's procedural due process right to an impartial adjudicator.

In terms of communications with Buchanan Administrators, the FAC does not extensively describe these communications.  The FAC does, however, appear to allege that some of the false and misleading information that was regularly communicated was the same as that reflected in Bradford's report.  See FAC at ¶ 43.  To the extent the FAC is alleging that Egan and Smith repeated or reinforced the contents of Bradford's report during regular communications with Buchanan Administrators, such conduct would be actionable for the same reasons as the disclosure of the report itself.  However, the Court does not believe that the FAC contains sufficient Rule 8 notice of any other false and misleading information that was provided during regular communications.  If Hill is aware of other communications, then he is to describe those communications with more specificity in an amended complaint.

In terms of immunities, the FAC's allegations do not make it clear that providing the report to Buchanan Administrators, or discussing the contents of the report with Buchanan Administrators, is part of the prosecutorial/quasi-judicial function of Egan and Smith.  As pled, the FAC indicates conduct that was not done in furtherance of preparing to file charges or preparing to prosecute a case in court.  Rather, the FAC indicates that Bradford's report was disclosed and the information repeated in a non-judicial setting.  Thus, the allegations in the FAC do not indicate that either absolute prosecutorial immunity or Eleventh Amendment immunity is

1    appropriate at this time.[21]  See Buckley, 509 U.S. at 273-74; Pitts, 17 Cal.4th at 362.

2          With respect to qualified immunity, the County Defendants did not argue that qualified

3    immunity would apply to the provision of the report or to the related communications.  Instead,

4    their qualified immunity arguments were limited to the acts of issuing the subpoena and

5    interviewing Rice's father.  See Doc. No. 32-1 at 8:4-20.  Given the current state of the

6    allegations, it seems likely that the analysis of qualified immunity for the County Defendants

7    would be similar to the above analysis of qualified immunity for Bradford.  Nevertheless,

8    because the County Defendants have not specifically addressed qualified immunity for these

9    particular acts, the Court will not rule on whether the County Defendants are entitled to qualified

10   immunity at this time.[22]

11         **2.    2nd & 3rd Causes of Action - State Law Malicious Prosecution & Defamation**

12         *Defendants' Arguments*

13         The County Defendants argue that the state law causes of action should be dismissed

14   because immunity under Government Code § 821.6 applies.  Prosecutors are entitled to immunity

15   for instituting and prosecuting judicial proceedings, which includes investigations and press

16   releases that describe the progress of the case.  To the extent that statements are identified in the

17   FAC (including the juvenile petition itself), the statements are part of the investigative and

18   prosecutorial process.

19         *Plaintiff's Opposition*

20         Hill argues that the conduct at issue exceeded the scope of the County Defendants'

21   employment.  The conduct was done to improperly prejudice the expulsion proceeding, and the

22   communications at issue were "behind the scenes."  As such, they were not part of the Juvenile

23   Action process, and the immunity of § 821.6 does not apply.

24         *Discussion*

25         Aside from the grounds expressly raised by the County Defendants, the allegations of

26   _____

27   [21] If Hill chooses to file an amended complaint, he is not required to plead all facts that might bear upon
     whether an immunity applies.  For now, it is enough to allege facts that indicate that immunities do not apply.
28   However, this does not mean that the immunity issue cannot be re-raised at a later time through a different motion.

     [22] The County Defendants may raise qualified immunity at a later time if they so choose.

compliance with the Government Claims Act are insufficient.  The relevant allegations simply state that an application to present a late claim was filed pursuant to Government Code § 911.4. See FAC at ¶¶ 62, 118.  However, as discussed above, this allegation does not show compliance, and compliance with the Government Claims Act is an element of a cause of action against a public entity or public employee.  See Shirk, 42 Cal.4th at 209; City of Stockton, 42 Cal.4th at 738; Briggs, 230 Cal.App.3d at 612-13.  The second and third causes of action will be dismissed for failure to adequately allege Government Claims Act compliance.  See Mangold, 67 F.3d at 1477; Karim-Panahi, 839 F.2d at 627.

The Court will not grant leave to amend the second cause of action.  The second cause of action is for malicious prosecution, and the allegations are very similar to those alleged under the first cause of action.  Under California law, malicious prosecution "consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause." Asgari v. City of Los Angeles, 15 Cal.4th 744, 757 (1997); see also Judicial Council of Cal., Civil Jury Instructions ("CACI") § 1500 (Fall 2011 ed.).  However, irrespective of any improper motivations or negligent conduct, public prosecutors are immune under California Government Code § 821.6 for claims of malicious prosecution.  See Cal. Gov. Code § 821.6; Asgari, 15 Cal.4th at 756-57; Baughman v. State of California, 38 Cal.App.4th 182, 192 (1995); Kemmerer v. County of Fresno, 200 Cal.App.3d 1426, 1436 (1988).  Because the immunity of § 821.6 applies, amendment of Hill's state law malicious prosecution cause of action would be futile.

With respect to the defamation claim, it is not necessarily clear that § 821.6 applies to this claim.  Section 821.6 is broadly construed, see Gillan v. City of San Marino, 147 Cal.App.4th 1033, 1048 (2007), and arguably does apply to the allegations supporting the claim.  Cf. Gillan, 147 Cal.App.4th at 1048 (applying § 821.6 to a press release); Ingram v. Flippo, 74 Cal.App.4th 1280, 1292-93 (1999) (same).  Nevertheless, since the Court has serious doubts that Hill has complied with the California Government Claims Act, it is unnecessary for the Court to decide

the issue at this time.[23]   The Court will instead give Hill the opportunity to allege compliance

with the Government Claims Act.[24]

### III.   City of Clovis Police Department

In the prior motion to dismiss, the Court substituted the City of Clovis for the City of

Clovis Police Department as a defendant.  The Court did this based on the representations of the

parties.  However, the FAC continues to list the City of Clovis Police Department, and the City

Defendants again ask for dismissal.  Hill admits that the Clovis Police Department should not

have been in the style of the case.  See Doc. No. 35-1  In light of these circumstances, the Court

will again dismiss the Clovis Police Department.

### CONCLUSION

The City Defendants and the County Defendants both move to dismiss the FAC under

Rule 12(b)(6).  With respect to the City Defendants' motion, dismissal of the first claim is not

appropriate.  The FAC alleges viable claims for malicious prosecution and violation of the

Fourteenth Amendment procedural due process right to an impartial adjudicator.  Further, given

the nature of the allegations, the Court cannot grant Bradford qualified immunity at this time.

However, dismissal of the second and third causes of action is appropriate.  The FAC does not

allege compliance with the Government Claims Act, and it does not appear that Hill can allege

compliance.  Therefore, dismissal of the second and third causes of action will be without leave

to amend.

---

[23] The County Defendants did not move to dismiss on the basis of the Government Claims Act presentation requirements, and, unlike the City Defendants, did not submit a rejection letter.  However, in light of the City's denial of Hill's § 911.4 letter, it appears likely (though not certain) that the County also denied Hill's § 911.4 letter.

[24] If appropriate, the County Defendants may re-raise the application of § 821.6 to this cause of action if Hill can allege compliance with the Government Claims Act.  Additionally, to state a claim for defamation, among other things the defamatory statement(s) must be identified.  See Atwal v. Lawrence Livermore Nat'l Sec., 2012 U.S. Dist. LEXIS 19772, *13 (N.D. Cal. Feb. 2, 2012); Marschall v. Caine & Weiner Co., 2011 U.S. Dist. LEXIS 67322, *10 (C.D. Cal. June 23, 2011); Rashdan v. Geissberger, 2011 U.S. Dist. LEXIS 4792, *24-*25 (N.D. Cal. Jan. 14, 2011). Any amended complaint should identify the defamatory statements that are at issue.  See id.

With respect to the County Defendants' motion to dismiss, dismissal of the first cause of action's malicious prosecution claim is appropriate because absolute and Eleventh Amendment immunities apply.  Dismissal of the Fourteenth Amendment claim that is based on the provision of Bradford's report and the reiteration of the report is not appropriate, and the allegations in the FAC provide a sufficient basis for the Court to deny the County Defendants either absolute or Eleventh Amendment immunities at this time.  However, dismissal of any Fourteenth Amendment claim that is based on interviewing witnesses, the January 2011 subpoena, omitting information from the juvenile petition, omitting information from communications with administrators, instituting the juvenile petition, and informing administrators of the existence of the Juvenile Action, is appropriate.  With the exception of informing administrators about the existence of the Juvenile Action, dismissal will be without leave to amend because either various immunities apply, no adequate duty was identified, or the conduct does not violate the Fourteenth Amendment.  Dismissal of the second and third causes of action for failure to properly allege compliance with the Government Claims Act is appropriate.  Dismissal of the second cause of action will be without leave to amend because the immunity of Government Code § 821.6 applies.  Dismissal of the third cause of action will be with leave to amend, but the Court expresses no opinion at this time as to the applicability of Government Code § 821.6 to this claim.


**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    The City Defendants' motion to dismiss the first cause of action is DENIED;

2.    The City Defendants' motion to dismiss the second and third causes of action is GRANTED without leave to amend;

3.    The County Defendants' motion to dismiss the malicious prosecution claim in the first cause of action is GRANTED without leave to amend;

4.    The County Defendants' motion to dismiss the Fourteenth Amendment claim in the first cause of action is GRANTED in part and DENIED in part as follows:

a.   Dismissal of claims based on the provision of Bradford's report, or the reiteration of the contents of that report, is DENIED;

b.   Dismissal of claims based on the initiation of the Juvenile Action, the omission of information from the juvenile petition, the interview of Rice's father, the January 2011 subpoena, and the omission of information from communications with administrators are GRANTED without leave to amend;

c.   Dismissal of claims based on the disclosure of the existence of the Juvenile Action is GRANTED with leave to amend;

5.   The County Defendants' motion to dismiss the second cause of action is GRANTED without leave to amend;

6.   The County Defendants' motion to dismiss the third cause of action is GRANTED with leave to amend;

7.   The Clovis Police Department is again DISMISSED from this case;

8.   Hill shall have twenty-one (21) days from the service of this order in which to file an amended complaint that is consistent with the analysis and instructions of this order; and

9.   If Hill does not file an amended complaint, Defendants shall file either answers or other appropriate pleadings or motions within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   __March 8, 2012__

CHIEF UNITED STATES DISTRICT JUDGE